UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:19-CV-00117-LLK

JAMES J. STEINHILBER                                           PLAINTIFF

v.

ANDREW SAUL, Commissioner of Social Security            DEFENDANT

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Plaintiff's complaint seeking judicial review, pursuant to 42 U.S.C. § 405(g), of the final decision of the Commissioner denying his claim for social security disability benefits. The fact and law summaries of Plaintiff and Defendant are at Dockets Number ("DN") 13 and 18. The parties have consented to the jurisdiction of the undersigned Magistrate Judge to determine this case, with any appeal lying before the Sixth Circuit Court of Appeals. [DN 10].

Plaintiff argues that the Administrative Law Judge's ("ALJ's") finding that he can perform light work is not supported by substantial evidence. Because the argument is persuasive, the Court will REMAND this matter to the Commissioner for a new decision.

**The ALJ found that Plaintiff can perform light work.**

In November 2003, Plaintiff was in a motor vehicle accident that shattered his legs and knees and required reparative surgeries. [DN 9-2 at PageID # 60]. In his written decision, the ALJ recognized that Plaintiff suffers from the following severe, or vocationally significant, impairments related to the accident and surgeries: "hip and leg pain by report; arthritis/degenerative joint disease (DJD) of the bilateral knees with pain; history of bilateral distal femoral fractures of the knees, s/p [status post] bilateral ORIF [open reduction internal fixation]." *Id.* at 57.

Notwithstanding these severe impairments (residual effects) affecting Plaintiff's lower extremities, the ALJ found that Plaintiff can perform light work. *Id.* at 60. Light work requires, among other things, standing/walking 6 hours per 8-hour workday (with sitting during the remaining 2 hours).

Social Security Ruling (SSR) 83-10, 1983 WL 31251, at *5-6.  Additionally, the ALJ found that Plaintiff can perform the following activities (requiring good use of the lower extremities) on an "occasional" basis, where SSR 83-10 defines "occasional" as occurring up to one-third of the workday:  pushing/pulling using the lower extremities; operating foot controls; climbing stairs/ramps.  [DN 9-2 at 60].

In July 2015, Wifredo A. Fernandez, M.D., examined Plaintiff at the request of the Commissioner (Exhibit B7F).  [DN 9-7 at 433-36].  Based only on gross physical examination (with no imaging studies), Dr. Fernandez gave a narrative report that began stating (correctly) that Plaintiff "Mr. Steinhilber is a 46-year-old, gentle man involved in a car accident 11/2/2003" and that ended stating (incorrectly) that "Mr. Durham is a 56-year-old, gentleman involved in a car accident in 2003."  [DN 9-7 at 433, 435].  In the last paragraph of his report, Dr. Fernandez offered a medical source statement that identified no concrete physical limitation (of any type):

> MEDICAL SOURCE STATEMENT:  Based on the medical findings it would appear that Mr. Steinhilber has the ability to perform activities involving sitting, standing, moving about, lifting, carrying and handling objects, hearing, seeing, speaking and traveling.  His physical examination was within normal limits.  Orthopedic examination was without limitation.  At this time, I see no significant limits to his activities.  He can lift, push, pull, he can bend, stoop, squat, he can kneel, crawl and crouch without difficulty.  He can climb ladders and scaffolds, he can walk up and down steps.  He denies any symptoms of chest pain.  He has normal gait and station without evidence of gross motor dysfunction, sensory loss or reflex abnormality.  He does not use a prescribed medical assistive device for ambulation.  He has the ability to hear and understand normal conversational speech.  He has normal gross manipulation and grip strength.  Recommend pulmonary function test if not already performed.

[DN 9-7 at 434].

In March 2016, based in part on Dr. Fernandez's findings, the Commissioner's non-examining program physician Alex Guerrero, M.D., opined that Plaintiff can perform a limited range of light work (Exhibit B5A).  [DN 9-2 at 161-63].

In November 2017, Plaintiff's treating orthopedist Galen Weiss, M.D., gave a Physical Medical Source Statement, which, if accepted, would preclude light work (Exhibit B15F).  [DN 9-8 at 574-77]. Among other things, Dr. Weiss opined that, due to patellofemoral degenerative joint disease (PF DJD) and

femur deformities, Plaintiff can stand/walk for less than 2 hours total in an 8-hour working day. *Id.* In contrast to the ALJ's finding that Plaintiff can occasionally climb stairs, Dr. Weiss opined Plaintiff can rarely climb stairs. [DN 9-2 at 60, DN 9-8 at 576].

The ALJ summarily credited the opinions Drs. Fernandez and Guerrero and discredited the opinion of Dr. Weiss:

> As for the opinion evidence, the undersigned assigns great weight to the assessment and residual functional capacity of the State Agency's psychological and physical consultants at Exhibit B5A [Dr. Guerrero's opinion]. … Great weight is also given the consultative examination assessments found at Exhibits B7F and B8F [Dr. Fernandez's opinion]. Both assessments are based on direct examination and objective findings. Additionally, the assessment[s] are well reasoned and supported by the totality of the medical records.
>
> Little weight is given the medical source statement of Galen Weiss, M.D., at Exhibit B15F because the limitations assessed are not supported by the totality of the medical record and objective findings. Furthermore, it appears that Dr. Weiss only examined the claimant once.

[DN 9-2 at 62].

### The rules for weighing medical opinions

Plaintiff argues that the ALJ erred in giving little weight to the opinion of his treating orthopedist, Dr. Weiss. [DN 13 at 601-05].

In general, "an opinion from a medical source who has examined a claimant is given more weight than that from a source who has not performed an examination," but less weight than a treating source. *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375 (6th Cir. 2013).

A "treating source" is defined as Plaintiff's "own acceptable medical source" who provides, or has provided, him "medical treatment or evaluation" as part of a current or previously "ongoing treatment relationship." *Stewart v. Comm'r*, No. 19-1266, 2020 WL 2125330, at *2 (6th Cir. May 5, 2020) (citing 20 C.F.R. § 404.1527(a)(2)). ALJs must give a treating source's medical opinion "controlling weight" if the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." *Id.* (citing 20 C.F.R. § 404.1527(c)(2)). Otherwise, the ALJ should evaluate the treating source's opinion in accordance with a

3

set of regulatory factors. *Id.* Those factors include "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Id.* (citing 20 C.F.R. § 404.1527(c)(2) through (c)(6)).

ALJs must "always give good reasons in our notice of determination or decision for the weight we give [a] treating source's opinion." *Cole v. Comm'r*, 661 F.3d 931, 937 (6th Cir. 2011) (quoting 20 C.F.R. § 404.1527(c)(2)). Those good reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* (quoting Soc. Sec. Rul. No. 96-2p, 1996 WL 374188, at *5). This requirement is not simply a formality but rather exists to safeguard Plaintiff's procedural rights. *Id.* It is intended "to let claimants understand the disposition of their cases, particularly in situations where a claimant knows that his physician has deemed him disabled and therefore might be especially bewildered when told by an administrative bureaucracy that [he] is not." *Id.* at 937-38. Additionally, the requirement of giving "good reasons" is intended to safeguard a reviewing court's time, as it "permits meaningful" and efficient "review of the ALJ's application of the [treating physician] rule." *Id.* at 938.

### The ALJ erred in giving little weight to Dr. Weiss's opinion.

For the four reasons identified below, the ALJ erred in giving little weight to Dr. Weiss's opinion.

First, the ALJ failed to recognize that Dr. Weiss was Plaintiff's treating physician, or alternatively, failed to articulate substantial reasons for concluding that Dr. Weiss was **not** Plaintiff's treating physician. While the ALJ found that "Dr. Weiss only examined the claimant once" [DN 9-2 at 22], Dr. Weiss examined Plaintiff on at least two occasions (prior to his November 2017 Physical Medical Source Statement) -- on June 22, 2017 and on October 31, 2017. [DN 9-8 at 572, 582].

Second, while the ALJ found that Dr. Weiss's opinion was "not supported by the totality of the medical record and objective findings" [DN 9-2 at 22], the opinion was based on the residual effects of a November 2003 motor vehicle accident, including "patellofemoral degenerative joint disease (PF DJD) and femur deformities," as evidenced by bilateral knee x-rays showing (on both sides) "metallic plate along the lateral aspect of the distal femur with multiple transfixing screws" and "marked" abnormality of the distal femoral metaphysis and diaphysis. [DN 9-8 at 574 referencing DN 9-7 at 388].

Third, in support of his decision to give greater weight to the opinion of a one-time examining source, Dr. Fernandez, than to the opinion of Dr. Weiss, who was arguably a treating source, the ALJ found that Dr. Fernandez's opinion was "based on … objective findings." [DN 9-2 at 62]. Yet Dr. Fernandez's opinion was based only on gross physical examination (with no imaging studies). [DN 9-7 at 433-36].

Fourth, while the ALJ found that Dr. Fernandez's opinion was "well reasoned and supported by the totality of the medical records" [DN 9-2 at 62], the opinion misstated Plaintiff's name and age and, despite residual effects of a November 2003 motor vehicle accident, identified no concrete physical limitation (of any type). [DN 9-7 at 433-34]. Additionally, Dr. Fernandez found no limitation of range of motion or tenderness, although treatment notes indicated limited range of motion, pain with passive knee extension and flexion, and "tenderness on palpation of patellofemoral joint." [DN 9-7 at 392, 396, 434; DN 9-8 at 582].

**Plaintiff has not proven his knee impairments satisfy Listings 1.02 and 103.**

Finally, Plaintiff argues that the ALJ erred in not finding his knee impairments satisfy Listings 1.02 and 1.03. [DN 13 at 597-600]. The argument is unpersuasive because both Listings require an "inability to ambulate effectively, as defined in 1.00B2b." "Inability to ambulate effectively means an extreme limitation of the ability to walk." Listing 1.00B2b(1). "Ineffective ambulation is defined generally as having insufficient lower extremity functioning … to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities." *Id.* Plaintiff identifies no

5

evidence of extreme limitation in ability to walk or use of a hand-held assistive device – much less use of a hand-held device that limits the functioning of both upper extremities.

**Order**

Because the Administrative Law Judge's ("ALJ's") finding that Plaintiff can perform light work is not supported by substantial evidence, the Court hereby REMANDS this matter to the Commissioner for a new decision and any further administrative proceedings deemed necessary and appropriate by the Commissioner.

May 13, 2020

Lanny King, Magistrate Judge
United States District Court